As the court knows, this is a UIM case under a Virginia automobile liability policy. I represent the family of a decedent. The tortfeasor's vehicle had 100,000 liability coverage and our folks had a policy that had UIM coverage for three vehicles. Earlier in the first argument, I heard Justice Duncan say, let's take a step back and look at the big picture here. And that's what I would like to do first if I'm allowed. The insured paid a premium on three separate vehicles for property damage and what are called split limits, 100,000% or 300 per accident. They were charged a premium, they paid the lump sum premium, and now the insurer interprets its policy to completely eliminate any obligation to make a UIM payment. I do not know how they got there. Mr. Casey might be able to explain where this offset takes place. They are using an offset to completely deprive this family of any UIM payments because they had 100,000 themselves and the tortfeasor had 100,000. That result is void against Virginia public policy. There is a case, if you look at the liability provision, it says our maximum liability is 100,000 but then section B goes, but we get credit for anything you get from the tortfeasor. So in other words, in this case, zero. By offsetting that amount, our people have paid for something that they will never get. It's illusory. And although it's lost in the legal argument, if you look at the insurer's initial denial letter, which is JA 136, they said you don't get paid because of the offsetting limits is the words they use. If you look at the State Farm versus Hill case, the Virginia Supreme Court decision that stated, and these are quotes, allowing a limitation on liability, allowing a limitation on the amount paid presumes that some amount will be paid. Nationwide's UIM endorsement setoff requirement entirely eliminates payment under the UIM portion of the policy. So while there's a Virginia code section, 38.2-2204, it allows the insurer to limit its liability but not to eliminate its liability. And the Virginia Supreme Court, when Nationwide tried it in 1994, said you can't eliminate your liability by having a maximum and then having an offset. They're entitled to something because they paid for it and otherwise it would be illusory. Now it's important because in that case I've just cited, there was a discussion about the Goodville case. I know the court's familiar with the Goodville case. That's the case where the limitation of liability was upheld. What the court said, though, is... If the at-fault driver had had less coverage, wouldn't there have been money available from your client's insurance policy to cover? Yes. If, let's say, the at-fault vehicle had the statutory minimum of $25,000, then we would get, presumably, $75,000 under that context. I'll come back to that in a minute because that's going to set up another conflict within the policy itself. But if you look at the case that I've discussed, Hill v. Nationwide, they go right after the Goodville case. Because the Goodville case said these anti-stacking provisions are permissible so long as they're clear. But in the case in which the Virginia Supreme Court said you can't eliminate your liability, the court stated, nor does the rationale allowing policy provisions to limit the stacking of UM coverage support the set-off provisions as Nationwide asserts. And it cites Goodville. It goes on to say, prohibiting stacking of UM coverage does not eliminate all payment under the UM coverage as Nationwide set-off provisions do here. In your response to Judge Traxler's question, his hypothetical, would the $75,000 you feel that you are saying you would be entitled to cover, would that come from the UIM provision, in your view? In our view, I think the way the UIM, the UIM provision, and I'll address that point now. I think the UIM provision is deceptive and misleading because of certain scenarios that can arise based on the amount of coverage that the at-fault vehicle has. As you know, the limitation of liability says the maximum we will pay or the most we will pay is the single per person limit, in this case 100. Under no scenario would that be the maximum paid or the most paid. Because if the person had the statutory minimum, the most would pay is 75. So that means there is an offset for what, you're recognizing that there is an offset against what all state pays. That's what the policy says. I say in practice, the policy says specifically that any amounts recovered from the at-fault vehicle will be reduced against what it is. So it would be offset, using your language. So, under which, that was my understanding as well. And the reason I ask is that there were points in your brief at which I was not clear. There were points at which I thought you were arguing that you were still permitted to recover $100,000 from Garrison even after the award of $100,000 from Allstate. That's correct, that's exactly what I'm saying. But you've just acknowledged, as I understood, well there are two problems with that. You've just acknowledged there's an offset. So I don't, since you've received the $100,000 from Allstate, I don't know where that $100,000 from Garrison, how that would survive. Given your apparent acknowledgment that an offset occurs. Which is precisely why that offset is illegal and void against public policy under the case that I cited, Hill vs., Nationwide vs. Hill. So you're beyond the, you're not, you're just beyond the language of the policies. No, I'm looking at the language of the policies. I'm looking at the language of the policies. Part A says you get a $100,000 cap. Part B says you can subtract out whatever you've received from the at-fault driver. If you subtract out and they get zero, which they're getting under this circumstance, they would have gotten the $100,000 from Allstate whether they paid for UIM coverage or not. But they've paid a premium for something they can never get under this policy. And that's why you get cases like the Keeling case out of the Northern District of Illinois, where they're saying these policies are illusory the way they're set up. Because if you use reducing provisions in addition to a limitation of liability provision, you're going to end up owing zero. I don't, I'm sorry, I'm not clear on your argument. Are you saying that the offset function is void as against public policy? In tandem, limiting the amount to a specific number, and then offsetting that just because the fortuity of this accident, that number happened to be the same. Yes, that is void as against public policy. In this context, but not in the context of your response to Judge Traxler's question, the hypothetical that he gave about the recovery from Allstate of $25,000, and you acknowledged the offset of that. So it's in this context that it's void? It's in this context where you have offsetting limits which essentially give you zero. Go back to the 38.2, 2004 code section, which says you are allowed to limit your liability. It does not say you're allowed to eliminate your liability. The way they have this policy set up, they first limit their liability to a specific number, and then offset it in those circumstances where people have the same amount. So you're in actual violation of 38.2, 224, which will control over any insurance policy. The people should receive at a minimum $100,000 because that's the maximum limit of liability the insurer said it would pay. And in this case, even though it says it's the most we'll pay, or that's the maximum, it will never ever do that, so it's duplicitous. You have UM coverage, don't you, when it's an uninsured motorist, don't you? Yeah, you'd have UM coverage. You'd get $100,000, wouldn't you? You would get, in that case, $100,000. Right, so you would get $100,000. Yeah, but it doesn't say. The provision, it's the only place in the entire policy where the distinction's not made between UM or UIM coverage. It just says underinsured motorist coverage is the only place. And it's anomaly, but reading it as an ambiguity, that if under UIM the maximum I should get is $100,000, that's what we should get. They then resort to a different policy provision and basically eliminate the protection the code had allowed to give them of $100,000 limit. That's their limit. That's the most they would have to pay against damages if that provision of the policy were to stand up. Now, I don't think it should. I think in this case you have stacking for the reasons I've stated in my brief. That wouldn't be the case either. It could be if a different state has different floors for insurance. For example, Louisiana has different. You would get that amount too, but you're saying it could never be $100,000 under UIM. Under UIM it could never be, and we've cited three cases in the brief where they have said this is duplicitous because it could never be $100,000 because if they have the minimum amount, $25,000, the most you'll be paid is $75,000. That's the most you'll be paid. So when the provision says the most you will be paid and the maximum we will pay is $100,000, that is false in every UIM context. We cited the mid-century decision for that proposition, and there's class action in Chicago now where people are saying these policies, it's a loose recovery. We're paying for something we can't get. In this case, our people have paid years and years of premiums for UIM coverage, and they're not getting a dime. The Virginia Supreme Court, again, I'll commend the citation. It's nationwide mutual versus Hill. Well, they got $100,000 from all states. Yeah, they got the tort fees amount, but what they didn't get is the UIM amount. If their damages exceed the $100,000, which for purposes of this argument we're saying it does, then they are coming up short. Virginia is one of those states that says, it's the narrow interpretation versus the broad interpretation. Virginia is one of the states where you get all sums. If there's a distinction between limiting the insurer's liability or giving more to the insured, you give more to the insured under Virginia law. This court in 1966, the case called White versus Nationwide, was the first case in the country to hold that. In this case, you are depriving them of UIM coverage by policy provisions that are void as against public policy. The Virginia Supreme Court has looked at this exact issue. The Goodville case said you can limit it to $25,000, and the person got the $25,000. Here, they've taken it a step further. They've redrafted the policy to say you can limit it to $100,000, but by the way, we're now going to take a credit against the $100,000, so you now get zero. And that is the problem. That is what the Virginia Supreme Court has said in three separate contexts. Dyer versus Dairyland, the Bryant case in 1965, and this Hill versus Nationwide case. They specifically looked at Goodville, the stacking language. They say you're allowed to have an anti-stacking provision, but you cannot eliminate all your liability. If you want to reduce it to a single limit per occurrence per person accident, that's what you owe. And in this case, I think the policy allows for stacking. It clearly says the sums of the limit of liability. That's in our brief, and I don't know if you have questions about that. But in this case, the policy itself is set up such that it is void against public policy in this context. And you'll never know at that time of the policy being issued who the other court fees are going to be. It may be void, it may be unvoid. That goes against the insurer. The insurer can draft these things in such a way, had they not gotten greedy and just tried to limit their liability, which Goodville said they could do, then they probably would have passed muster. But here they went beyond that. They tried to say, we're going to limit our liability, and then we're going to take an offsetting credit, so we owe you nothing. And the Virginia Supreme Court clearly has said, no, you've got to pay something. They have paid for that coverage. They're entitled to get something. While you can limit it, you can limit it, you cannot eliminate it. And here, the stacking language, the $300,000 is if you stack the three vehicles. The insurer definition says, the sum of the limits of liability applicable to the insurer. The word sum means you aggregate. Limits is plural. If you add them together, you get at least $300,000. So that should be the amount. If the limitation of liability is stricken as it should be, as void against public policy, we should get $300,000 in UIM coverage. The judge below gave $100,000, but we're not sure what exactly that meant. Thank you, Mr. Wilson. Casey. Good morning. Thank you. In this case, Westphier seeks to stack the uninsured motorist coverage of her policy with Garrison to increase the amount of uninsured motorist coverage above the $100,000 for each person in the accident limit that's shown in the declarations. This she cannot do because the plain language of the policy prohibits it. That language in the policy is language that has been approved by the Supreme Court of Virginia and other federal and state courts applying Virginia law to prohibit stacking in this context. In fact, no court has permitted stacking of uninsured motorist coverage on a policy like the Garrison policy. Do you have a case where they allow stacking provision like here and also concomitant offset provision like you have? Well, the use of the word offset is somewhat confusing to me because it's nowhere in the policy that I can find. Basically, that's what it is. You say you can't stack, and then it says that even if after applying no stacking, whatever you get from the other company, the Tort Visa Insurance Company, that's going to be a full credit. So when you put those two together, that's what counsel is saying. I'm asking you, is there a case law that allows to say that was appropriate? Yes, you're right. Stacking, as you've done, I think that's pretty clear. But putting that together, have you now gone out of the range there? I don't think so, Your Honor. I don't know of any case that says that, but that's not really the position that we take in this case. We're not arguing there's some offset. We're arguing that the vehicle driven by Heather Anderson that was insured by Allstate is not an underinsured motor vehicle as defined by the policy, and therefore because it is not an underinsured motor vehicle as defined by the policy, the underinsured motorist coverage is not implicated. It's as simple as that. And that is shown, and I'll go to that right now to show how we arrive at that conclusion. You look at the policy limits of garrison's liability under the policy for each person in order to determine the amount of uninsured motorist coverage that is available under the policy. At Joint Appendix 32, the policy states the limit of liability and says that the limit of bodily injury liability shown in the declarations for each person for uninsured motorist coverage is the maximum limit. So that directs the reader to the declarations. You look at the declarations then, which is at page 15 of the Joint Appendix, and by looking at the declarations, it's clear that the limits of liability shown in the declarations for bodily injury for uninsured motorist coverage for each person is $100,000. So then the question becomes, once you've determined that that's the amount from those provisions that it's $100,000, the question is, is the Heather Marie Anderson vehicle an uninsured motor vehicle? Well, you look then to the definition in the policy of what an uninsured motor vehicle is, and clearly it's not an uninsured motor vehicle because it's insured by all state with liability coverage limits of $100,000. So under the definition in the policy, the Heather Marie Anderson vehicle is not an uninsured motor vehicle. So the next question then is, is the Heather Marie Anderson vehicle an underinsured motor vehicle? In order to determine whether it's an underinsured motor vehicle, again, look to the definition of an underinsured motor vehicle in the policy. And in the policy, the definition of an underinsured motor vehicle requires one to determine the amount of liability insurance coverage that is available for payment of the claimant. That's the $100,000 that all state has and has offered to pay in this case. And compare that to the sum of the limits of uninsured motorist coverage under the garrison policy or any other policy. So when you look to the sum of the limits of uninsured motorist coverage under the garrison policy or any other policy, what is the answer to that question? It's $100,000 because we've just done the analysis that shows that that is $100,000. So the definition of underinsured motorist vehicle under Joint Appendix page 31 says, is the amount of liability coverage that's available for payment less than the amount of uninsured motorist coverage, the sum of the limits of the uninsured motorist coverage applicable under the policy. And it's clearly not less than because the amount of liability coverage is $100,000. The amount of uninsured motorist coverage applicable under the policy is $100,000. So they're the same, so the vehicle is not an underinsured vehicle. Did the district court disagree with you on that when it said $100,000 was the UIM coverage? Well, the district court said that the amount of UIM coverage, and this is at the end of the opinion, was $100,000. The district court did not say what UIM meant. And if you read through the district court's opinion, it's clear that the district court didn't distinguish between UIM and UM and didn't decide what those acronyms meant. If you read the opinion of the district court, it appears that the district court used the terms, so it appears that it used the term UIM without defining it to be uninsured motorist coverage. It doesn't have to. UIM is UIM. Well, UIM is either uninsured motorist coverage or underinsured motorist coverage. I'm not sure. I never use those terms, UM or UIM. You're the insurance company. You want everybody to live and die by the language of the policy. You're the last to be arguing that we don't live and die by the language of the opinion. The court said that the UIM coverage was $100,000. You didn't appeal, did you? I couldn't. You didn't appeal, right. So if this court found that that, in fact, was a statement of what the UIM coverage was, then that's the law of the case. Well, the court is correct. The district court was correct. The UIM coverage is $100,000. Yeah, but you said under your analysis, though, you come that the UIM coverage is zero. You took me very—I followed you very well. Right. So isn't that inconsistent with what you came up with? No, the coverage afforded under the policy is $100,000. It's $100,000. It's in the declarations of uninsured motorist coverage and underinsured motorist coverage. But this is a deck action. He's declaring what the court found. The court seemed to be finding that UIM coverage was $100,000. Well, the court did say that, and that is correct. The court did not say that the carrier owes $100,000 to the claimant. Can I—is it clear—what about the garrison bodily injury policy? It was not always clear to me whether we were talking about intra-policy stacking or inter-policy stacking. And what the plaintiff is attempting to do here is inter-policy, is intra—within the same policy. Intra. Intra. The plaintiff is attempting to do intra-policy stacking here because there is no other policy. Had there been another policy in which the plaintiff was insured for underinsured or underinsured motorist coverage, then those coverages, those uninsured motorist coverages, could be stacked under the provisions of this policy to then compare that amount to the amount of liability coverage that's available for payment for the claim of the insured against the at-fault vehicle. So, for example, if Ms. Westphier had a policy on another vehicle, a separate policy that provided $100,000, then you'd add that $100,000 to this $100,000 and have $200,000 in uninsured motorist coverage because it says compare the amount of liability coverage available for payment with the sum of the limits of liability applicable to the insured for uninsured motorist coverage under this policy or any other policy. So then you'd have $200,000 in uninsured motorist coverage to then compare to the $100,000. In that case, the vehicle would be underinsured and it would be underinsured in the amount of $100,000 in that situation. But we don't have that here. By going through the policy definitions and analysis, we know that the amount of uninsured motorist coverage is $100,000. That's not less than the amount of liability coverage, and therefore the vehicle is neither uninsured nor underinsured under the definitions under the policy. There is not a single court that I'm aware of that has adopted the plaintiff's argument in this case. And, in fact, we've cited five, I believe, federal court cases from district courts in Virginia that have considered this same policy and ruled the same way that Judge Dumas did. We have cited, within those cases and within the state court cases that have been cited, there are citations of at least 15 Virginia circuit court cases that have held the same way in considering similar policies or identical policies that stacking, intra-policy stacking is not permitted and that the anti-stacking language employed by Garrison in this policy is enforceable. The Supreme Court of Virginia has approved this language or language very similar to this in the Goodville case. And so to say that it is void is against public policy when the Supreme Court of Virginia has specifically approved similar language and it's been upheld by numerous Virginia circuit courts and U.S. district courts is not persuasive. The question about, since you touched on policy a little bit, your client writes insurance policies all over the country? I don't know if Garrison does that or not, but Garrison is part of USAA, which does. Which does, right. And can you think of any state that allows a policy to be, all have limits, right, or flaws? Like Virginia is $25,000, correct? So you would never pay out $100,000 under UIM. Well, under insured motorist coverage. Under UIM, under insured motorist coverage. Right. You'd never pay out $100,000. That, no, that's not correct. Okay, tell me how under insurance coverage you pay out $100,000, all right? In the example I just gave you, where there is, where there are more than one policy. No, I'm talking about the one policy the person purchased from you here. I'm not talking about someone who has another policy. I'm talking about your policy, this contract. Right, but in order to determine whether a vehicle is underinsured, you don't just consider the one policy. You consider other policies that may provide uninsured motorist coverage for that person and add them together. When I buy a policy of underinsurance coverage from you, I'm not buying another policy. I have my rights up under this policy. Correct. Under this policy here, this contract, where I pay premiums for, you can never pay $100,000, can you? Yes, we can. How? Just under this contract, without consideration of inter-policy stacking. Tell me how. Well, without consideration of inter-policy stacking, I don't know that you could. No, you can't. But under this policy, which is the only policy that would be paying that, you would be, Garrison would be paying $100,000 in underinsured coverage in a situation where there were multiple policies that were stacked and the vehicle then was underinsured in an amount that would lead to Garrison paying $100,000. So Garrison could pay $100,000 in underinsurance coverage under this policy if the vehicle is underinsured to the extent that that amount was required by Garrison to pay. But if you exclude, as you said in your premise to your question, inter-policy stacking from that consideration, then I think you're right. It would not be able to pay out $100,000 in underinsurance coverage. It could, obviously, as you mentioned earlier, could pay out $100,000 in uninsured motorist coverage, for example. Right, sure, U.M. coverage. Sure, exactly. But then you should change your policy amounts, right? It's misleading. I don't think it's misleading. It's not? No. I went through all of the language to show how you arrive at whether or not the vehicle is underinsured It should be a provision there, an asterisk that says to get there, you have to have another insurance policy involved for inter-policy stacking. But under this one, you could never pay out under UIM $100,000. Well, the definition of underinsured motor vehicle says that. It says that you compare the amount of liability coverage that's available for payment with the sum of the limits of liability applicable to the insured for uninsured motorist coverage under this policy or any other policy. So by looking at that definition and applying that, you can determine whether or not you could have $100,000 in underinsurance coverage available to you or not. And which policy would pay that out under the interest stacking? There's a – yeah, there's a – on page 33 of the joint appendix, there is a priority of policies listed on how that works. You would pay first. I think that's correct. Right. So that's how that works. So it's really as simple as the analysis of the policy language that I went through earlier. And the language of the policy provides the intent to provide $100,000 in uninsured, underinsured motorist coverage. And that's what we have in this policy. And the anti-stacking language, although it's not called anti-stacking in the policy, but that's the way the courts have referred to it, it's just called limits of liability in the policy, that language has been upheld to limit or prevent the intrapolicy stacking that the plaintiff in this case is asking this court to permit. No other courts have permitted it. The only case which has permitted it is a case that's clearly distinguishable. That's the Farm Bureau v. Williams case. And in that case it was permitted because that anti-stacking language directed the reader to the declarations page for the determination of what was the each person limit of uninsured motorist coverage, but there were multiple limits. So the reader did not know what the limit was by going to the declarations page. And the Virginia Supreme Court said, well, that created an ambiguity, and obviously it did, where it pointed the reader to different figures in order to determine the limits. The Supreme Court resolved that ambiguity by allowing the stacking. The plaintiff does not argue in this case that that ambiguity is present in our policy because it's not, and the plaintiff acknowledges that that's not the ambiguity, that that ambiguity is not present here. Thank you. Thank you, Mr. Casey. Mr. Wilson. Judge Gregory, I agree with you. The district court allowed $100,000. It was a declaratory judgment. It was never appealed. I figured coming to this court that was my starting point. The way they are using the underinsured motorist definition is improper. The underinsured motorist definition has two comparison points, the amount of the liability policy, in this case $100,000, and then the sum of the limits of liability applicable to the insured. Every case, and I've cited in my brief, that you have the sum of the limits of liability, that is stacking language. It is hallmark stacking language. Sum means to aggregate. Limits is plural. And so, therefore, what he's got to do is he's got to reach to a limitation of liability section to bootstrap in over the $100,000 to use it as an offset. Under the anatomy or structural policy, you don't do that. You look first at the definitions. Do you qualify as an underinsured motorist vehicle? Here you do. You stack. You get $300,000 because there are three vehicles. The sum of the limits of liability, $300,000, is more than $100,000. Then you get to the insuring agreement. The insuring agreement promises to pay in accordance with the Virginia statute. The Virginia statute says we pay in the amount it's underinsured, in this case $300,000. Then you get to the limitation of liability. You don't take that limitation of liability and pull it back into the definitions to make it an offset credit. Now, when he talked about Goodwill, Goodwill is distinguishable because it said the total limit of liability is $25,000. Here they said the most we will pay and the maximum liability. Those are significant differences because they are giving an upper sum. Courts that have reviewed that language, most we will pay and maximum liability, say that is duplicitous because it is impossible. The only way you would pay $100,000 is if it was UM coverage, meaning there was nothing to deduct from the tortfeasor's vehicle. Any other time to have underinsured motorists, there has to be some amount. That sum amount always has to be deducted, and every time it has been challenged, I've cited the cases in my brief where they say that is duplicitous and misleading to consumers. You're saying on your debt sheet you get $100,000, $300,000 for UIM, and you'll never get that if we're allowed to take this deduction. In UIM circumstance, yes. Never in the UM status, yes. Never in the UIM situation. When you ask the court, and I'll conclude with this, when you ask the court, I'm sorry, when you ask Mr. Casey, are you aware of a case which allows this offset? Of course not. There's a Virginia Supreme Court case that I have cited, 247 VA 78, page 85, that says we know about Goodville, we know the anti-stacking provision in Goodville allows it to limit its liability to prevent stacking, in this case the three vehicles, but you do not get a complete offset. Nationwide is the exact same argument in that case in 1994. If you read that case closely, it even cites to Goodville and says we're aware of it, it doesn't apply to allow a complete offset because that's void against Virginia public policy. Once you eliminate the limitation liability provision because it's void and we're allowed to stack, we should get the $300,000 that they paid for. So I just want to make sure I'm clear. I thought I understood your brief to claim more coverage than $300,000. We did, and it got us onto a slippery slope because we were including the per accident and the per damage because of that claim of omission in the language. You know, pigs get fed, hogs get slaughtered, and so for purposes of this argument, $300,000 is the number that I think is legitimate. You stack the three vehicles, $100,000 each. That's more than the $100,000 that she had, therefore we're an underinsured vehicle. We go straight to the insuring agreement. And under his analysis, the insuring agreement says we'll pay you a specific sum because that statute is a mathematical calculation. Virginia Supreme Court decisions say it's a mathematical calculation. It would be the equivalent of saying I will pay you $1,000 in Section A, but I'll pay you $100 in Section B. There's a conflict there, and that's what we've got here. This policy is flawed. Had they just tried to stay closer to Goodville and allowed themselves to have a limit on liability as opposed to an elimination of liability, they might have had a stronger argument. They've been collecting premiums all over the state and, God knows, all over the country for payments they'll never have to make. And there are cases around the country, class actions challenging that. That's all I have, and thank you for your attention.
judges: William B. Traxler Jr., Roger L. Gregory, Allyson K. Duncan